1

2

3

4

5

# UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7 APRIL GREENWOOD-DAVENPORT, | No. 1:15-CV-3113-FVS |
| 8 Plaintiff, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| 9 vs. | |
| 10 CAROLYN W. COLVIN, | |
| 11 Acting Commissioner of Social Security, | ECF Nos. 12, 14 |
| 12 Defendant. | |

13      BEFORE THE COURT are the parties' cross-motions for summary

14 judgment. ECF Nos. 12, 14. This matter has been referred to the undersigned

15 magistrate judge for issuance of a report and recommendation. ECF No. 16. The

16 Court, having reviewed the administrative record and the parties' briefing, is fully

17 informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's

18 Motion (ECF No. 12) be denied and Defendant's Motion (ECF No. 14) be granted.

19

20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

1   ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2   "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3   *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4   decision generally bears the burden of establishing that it was harmed.  *Shineski v.*

5   *Sanders*, 556 U.S. 396, 409-410 (2009).

6   **FIVE-STEP EVALUATION PROCESS**

7        A claimant must satisfy two conditions to be considered "disabled" within

8   the meaning of the Social Security Act.  First, the claimant must be "unable to

9   engage in any substantial gainful activity by reason of any medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of not less than twelve

12  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

13  "of such severity that he is not only unable to do his previous work[,] but cannot,

14  considering his age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy."  42 U.S.C. §

16  1382c(a)(3)(B).

17       The Commissioner has established a five-step sequential analysis to

18  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

20  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income on January 20,

2012.  Tr. 173, 186.  Plaintiff alleged disability beginning August 1, 2010.  Tr. 173,

186.  The application was denied initially, Tr. 107, and on reconsideration, Tr. 119.

Plaintiff appeared at a hearing before an administrative law judge (ALJ) on

November 12, 2013.  Tr. 37-75.  On February 10, 2014, the ALJ denied Plaintiff's

claim. Tr. 21-30.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has

not engaged in substantial gainful activity since January 20, 2012, the application

date.  Tr. 23.  At step two, the ALJ found Plaintiff has the following severe

impairments:  lumbar degenerative disc disease; obesity; depression; somatoform

disorder.  Tr. 23.  At step three, the ALJ found Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of a listed impairment.  Tr. 23-24.  The ALJ found Plaintiff not entirely

credible and determined:

> [C]laimant has the residual functional capacity to perform light work
> as defined in 20 CFR 404.967(b) except:  She can occasionally lift 20
> pounds and frequently lift 10 pounds; she can stand and/or walk for
> about 6 hours in an 8 hour workday with normal breaks; can sit for

about 6 hours in an 8 hour workday with normal breaks; can occasionally climb ramps and stairs, as well as ladders, ropes and scaffolds; she can frequently balance; can occasionally stoop, crouch, kneel and crawl; must avoid concentrated exposure to extreme cold, vibration, as well as hazards such as moving machinery and heights; she can perform repetitive tasks in a stable work environment.

Tr. 25-27.

At step four, the ALJ found Plaintiff is unable to perform past relevant work. Tr. 28.  At step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 29.  Thus, the ALJ concluded Plaintiff has not been under a disability since January 20, 2012, the date the application was filed.  Tr. 30.

On May 6, 2015, the Appeals Council denied review of the ALJ's decision, Tr. 2-8, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following three issues for review:

1.    Whether the ALJ properly weighed the medical opinion evidence;

2.    Whether the ALJ properly determined Plaintiff does not meet a

       listing; and

REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1    3.    Whether the ALJ properly discredited Plaintiff's symptom claims.

2  ECF No. 12 at 6-20.

3  **DISCUSSION**

4  **A.   Medical Opinion Evidence**

5    Plaintiff contends the ALJ improperly discounted the medical opinion of Dr.

6  Bellum and his findings regarding fibromyalgia.  ECF No. 12 at 7-10.

7    There are three types of physicians: "(1) those who treat the claimant

8  (treating physicians); (2) those who examine but do not treat the claimant

9  (examining physicians); and (3) those who neither examine nor treat the claimant

10  but who review the claimant's file (nonexamining or reviewing physicians)."

11  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

12  "Generally, a treating physician's opinion carries more weight than an examining

13  physician's, and an examining physician's opinion carries more weight than a

14  reviewing physician's."  *Id*.  "In addition, the regulations give more weight to

15  opinions that are explained than to those that are not, and to the opinions of

16  specialists concerning matters relating to their specialty over that of

17  nonspecialists."  *Id*.  (citations omitted).

18    If a treating or examining physician's opinion is uncontradicted, an ALJ may

19  reject it only by offering "clear and convincing reasons that are supported by

20  substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)).

Dr. Bellum was Plaintiff's primary care provider and saw Plaintiff intermittently through May 2012 for various conditions.  Tr. 260, 269, 282, 283, 285, 287, 315, 491.  In February 2012, Dr. Bellum wrote a letter stating that Plaintiff was diagnosed with depression/anxiety and chronic lumbalgia.  Tr. 254. He indicated that she was suffering from worsening depression and a recent fall which had exacerbated her back pain.  Tr. 254.  Dr. Bellum opined that Plaintiff was "unable to be gainfully employed due to [] psychiatric and medical problems." Tr. 254.  He indicated that she was taking increased doses of medication and needed counseling on a regular basis.  Tr. 254.  In addition, Dr. Bellum stated, "I understand that she is unable to keep a steady job at this time and also unable to participate in work source."  Tr. 254.

Dr. Bellum also completed two "DSHS Documentation Request for Medical/Disability Condition" forms on April 5 and April 11, 2012.  Tr. 554, 556, 558, 560.  On both forms, Dr. Bellum reported a diagnosis of chronic lumbalgia and indicated that Plaintiff could perform sedentary work.  Tr. 554, 558.  On the April 5 form, Dr. Bellum opined that Plaintiff could work or look for work for one to ten hours per week.  Tr. 554.  On the April 11 form, Dr. Bellum opined that Plaintiff was unable to participate in work or look for work.  Tr. 558.

1.    *February 2012 Opinion Letter*

The ALJ gave "little to no weight" to Dr. Bellum's February 2012 opinion letter.  Tr. 28.  Because Dr. Bellum's opinion was contradicted, *see* Tr. 99-101 (noting Dr. Bellum's opinion is more extreme than the evidence indicates and finding less restrictive limitations), the ALJ need only to have given specific and legitimate reasoning supported by substantial evidence to reject it.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ rejected the opinion letter because it is unsupported by the record.  Tr. 28.  An ALJ may discredit treating physician opinions that are unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ discussed evidence reasonably found to be inconsistent with Plaintiff's allegations and Dr. Bellum's opinion that she is "unable to be gainfully employed" and

"unable to keep a steady job" due to physical and mental impairments  Tr. 26-27.

For example, the ALJ noted imaging records of Plaintiff's spine did not show any

nerve-root impingement (Tr. 325) and only mild to moderate degenerative disk

changes without significant canal stenosis (Tr. 574).  Tr. 26-27.  The ALJ observed

Plaintiff did not experience radicular pain (Tr. 520) and had full strength in upper

and lower extremities (Tr. 357).  Tr. 26-27.  Regarding her mental health

impairments, the ALJ noted evidence that, for example, Plaintiff had good insight

and her concentration and memory were intact.  Tr. 27, 336, 356.  She was also

described as alert, oriented, well-groomed, and cooperative.  Tr. 27, 264, 488.  This

evidence is consistent with the ALJ's conclusion that the evidence does not support

Dr. Bellum's statement that Plaintiff cannot work.  Thus, this is a specific,

legitimate reason supported by substantial evidence for assigning little weight to

the opinion letter.

Second, the ALJ rejected the opinion letter because it infringes on an issue

reserved to the Commissioner.  Tr. 28.  A medical source opinion that a claimant is

"disabled" or "unable to work" is not a medical opinion and does not mean the

ALJ will determine the claimant is disabled.  20 C.F.R. § 416.927(d)(1).  The

determination of disability is an issue reserved to the Commissioner.  S.S.R. 96-5p.

An ALJ will not give any special significance to an opinion that a claimant is

disabled or unable to work.  20 C.F.R. § 416.927(d)(3).  Dr. Bellum's letter states

1    Plaintiff is unable to work and the ALJ reasonably determined the letter opinion

2    addresses an issue reserved to the Commissioner.  Furthermore, the letter mentions

3    no functional limitations and therefore provides little assistance in assessing

4    Plaintiff's limitations for purposes of the RFC.  Thus, this is a specific, legitimate

5    reason for rejecting the opinion.

6          2.    *DSHS Form Opinions*

7          The ALJ also reviewed the DSHS forms completed by Dr. Bellum but

8    mistakenly attributed them to Vicki Mills, WPS.[1]  Tr. 28.  The ALJ gave little

9    weight to the DSHS forms. Tr. 28.

10         First, the ALJ rejected the opinions because the medical credentials of the

11   author were unclear.  Tr. 28.  Defendant acknowledges the ALJ erred, since the

12   DSHS forms were actually completed by Plaintiff's treating physician, Dr. Bellum.

13   ECF No. 14 at 13.  However, Defendant argues the error is harmless since the ALJ

14   gave other specific, legitimate reasons supported by substantial evidence for

15   rejecting the opinions.  ECF No. 14 at 13.  Plaintiff cites *Stout v. Comm'r, Soc.*

16   *Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) and asserts, "Once an ALJ

17   commits legal error that particular ALJ who decided the case is not due deference,

18   _____

19   [1] Vicki Mills is a Work First employee who requested the medical opinions from

20   Dr. Bellum.  Tr. 554, 558.

REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

but the test becomes can the Court confidently conclude that no reasonable ALJ would have reached a different conclusion, not whether this ALJ might have reached the same conclusion."  ECF No. 15 at 2.

However, in *Stout*, the ALJ failed to provide *any* reasons for rejecting a lay witness statement and consequently there was no basis to determine whether the ALJ's decision was adequately supported.  454 F.3d at 1054-55.  The relevant inquiry is whether the ALJ's decision remains legally valid, despite the error. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Where one of an ALJ's reasons for rejecting a medical opinion is based on error, if other specific, legitimate reasons supported by substantial evidence were also provided, the error is harmless.  *Molina*, 674 F.3d at 112 n.4 (ALJ's possible error regarding the source of an opinion was harmless when ALJ gave specific, legitimate reasons supported by substantial evidence for rejecting the opinion). Because the ALJ in this case cited other valid, specific, legitimate reasons supported by substantial evidence for rejecting Dr. Bellum's opinion, the error in attributing the opinion to the incorrect source is harmless.[2]

---

[2] Without citing any authority, Plaintiff asserts, "It is not proper to say the ALJ gave reasons to reject other opinions from Dr. Bellum, therefore, this ALJ if she had realized this opinion was from Dr. Bellum would have rejected them for the

1    Second, the ALJ rejected Dr. Bellum's opinions because they were given in

2  boilerplate forms with no residual functional capacity assessment.  Tr. 28.  An ALJ

3  may reject check-box reports that do not contain any explanation of the bases for

4  their conclusions.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  On the

5  April 5 form, Dr. Bellum did not complete all of the questions and provided no

6  explanatory information.  Tr. 554.  On the April 11 form, Dr. Bellum did not

7  explain his opinion, despite being asked to describe any specific limitations

8  identified and how they affected Plaintiff's ability to work or look for work.  Tr.

9  558.  The ALJ reasonably concluded the form opinions are entitled to less weight.

10  This is a specific, legitimate reasons for rejecting the opinions.

11    Plaintiff argues that the opinions contained in the forms were supported by

12  Dr. Bellum's chart notes.  ECF No. 12 at 13.  However, Plaintiff fails to identify

13  any chart notes specifically supporting Dr. Bellum's conclusions that Plaintiff

14  cannot work or can work at the sedentary level on a very limited basis.  By

15

16  same reasons."  ECF No. 15 at 3.  Plaintiff argues additional weight would or

17  could be due the opinion by a reasonable ALJ if the ALJ realized the DSHS form

18  opinions were also generated by Dr. Bellum.  ECF No. 15 at 3-4.  Regardless, the

19  outcome of the case would not be different because the three remaining reasons

20  cited by the ALJ for rejecting the opinions are valid.

1   contrast, the ALJ identified numerous records supporting the determination that

2   Dr. Bellum's conclusions are not supported by the record.  *See supra*.

3          Plaintiff also argues the ALJ "inconsistently" gave significant weight to the

4   opinion of the state reviewing physician, Dr. Staley, whose opinion was also

5   reported on a form.  ECF No. 12 at 13; Tr. 27, 101-03.  However, as noted by

6   Defendant, Dr. Staley's opinion contains specific findings regarding limitations

7   and contains explanations for each finding.  ECF No. 14 at 14.  Dr. Staley

8   indicated that his findings are based on Plaintiff's degenerative disk disease,

9   chronic back pain, and fibromyalgia-type pain.  Tr. 100.  He noted evidence of

10  normal movements and full strength, but assessed limitations due to pain

11  complaints.  Tr. 100.  Dr. Staley also noted the environmental limitations assessed

12  were due to Plaintiff's past surgery.  Tr. 100.  Although Dr. Staley's findings are

13  economically worded, they explain the basis for his conclusions.  Furthermore, the

14  ALJ identified other substantial evidence in the record consistent with Dr. Staley's

15  findings.  Tr. 27; *see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

16  (opinion of a nonexamining physician may serve as substantial evidence if it is

17  supported by and consistent with other evidence in the record).  Thus, the ALJ did

18  not err by relying on Dr. Staley's opinion over Dr. Bellum's.

19         Third, the ALJ rejected the DSHS form opinions because they were

20  contracted by the longitudinal record.  Tr. 28.  The consistency of a medical

1    opinion with the record as a whole is a relevant factor in evaluating the opinion.

2    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495

3    F.3d 625, 631 (9th Cir. 2007).  As discussed *supra*, the ALJ noted numerous

4    records inconsistent with the severe limitations on Plaintiff's ability to work and

5    look for work opined by Dr. Bellum in the DSHS forms.  This is therefore a

6    specific, legitimate reason supported by the evidence for rejecting the opinions.

7            Fourth, the ALJ rejected Dr. Bellum's DSHS form opinions because they

8    were contracted by Plaintiff's daily functioning.  Tr. 28.  An ALJ may discount a

9    medical source opinion to the extent it conflicts with the claimant's daily activities.

10   *Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 601-602 (9th Cir. 1999).  The

11   ALJ noted evidence Plaintiff regularly collects scrap metal with her husband,

12   gardens, goes on trips to the mountains, fishes, plays sports with her children,

13   cleans, rides a bicycle, walks three or more miles a day four or five times per week,

14   and other similar activities.  Tr. 27, 50-51, 53-55, 59-62365, 505, 609.  Socially,

15   she attends her children's sporting events and school functions.  Tr. 27, 334.  She

16   reported she tripped on her stairs while running back and forth between her

17   outdoor garden and baking cupcakes inside.  Tr. 27, 566.  The ALJ reasonably

18   concluded that these activities are inconsistent with Dr. Bellum's opinion that

19   Plaintiff cannot participate in work or look for work for more than one to ten hours

20

1    per week.  This is therefore another specific, legitimate reason supported by

2    substantial evidence which justifies rejecting Dr. Bellum's DSHS form opinions.

3        *3.    Fibromyalgia*

4        Plaintiff contends the ALJ misinterpreted evidence about fibromyalgia

5    which should have been given more weight.  ECF No. 12 at 7-10.

6        The ALJ asserted Dr. Bellum found 18/18 positive fibromyalgia tender

7    points on examination in June 2011.  Tr. 28.  The ALJ observed that without

8    diagnosing fibromyalgia, the doctor sent Plaintiff for EMG testing, which was

9    unremarkable.  Tr. 28.  Accordingly, the ALJ assigned little weight to the

10   fibromyalgia findings after also considering the objective evidence and Plaintiff's

11   activities of daily living.  Tr. 28.  Plaintiff argues the ALJ misinterpreted the

12   evidence, misunderstands the process of diagnosing fibromyalgia, and committed

13   "obvious error."  ECF No. 12 at 7-8.

14       However, both Plaintiff and the ALJ misattributed the "fibromyalgia

15   evidence" to Dr. Bellum when in fact 18-point testing was done by Dr. Marsh at

16   Water's Edge Pain Center.  Tr. 28, 357, 445; ECF No. 12 at 7-10.  The only

17   records from Dr. Marsh in the record are exam notes from June and July 2011

18   which include findings of 18/18 positive fibromyalgia tender points.  Tr. 357, 445.

19   The June 2011 notes also mention "treatment considerations" of possible Effexor

20   or Cymbalta to help with sleep, and "which can also be helpful for fibromyalgia."

1    Tr. 358.  Despite exam findings of positive fibromyalgia tender points, Dr. Marsh

2    did not list fibromyalgia as a diagnosis in the "assessment" portion of his report,

3    consistent with the ALJ's finding.  Tr. 28, 357.  Vern Commet, ARNP, noted in

4    March 2012 that he reviewed Dr. Marsh's nerve studies and indicated Dr. Marsh

5    opined "he felt the patient probably has some component of fibromyalgia."  Tr.

6    518.  However, this conclusion does not appear to be contained in the nerve

7    conduction study results or other notes from Dr. Marsh in the record.  Tr. 354-58,

8    445-49.  Thus, it is not apparent from the record that Dr. Marsh diagnosed or

9    treated Plaintiff for fibromyalgia.  Further, Mr. Commet noted that Plaintiff's

10   "main complaint really is her low back and leg at this point."[3]  Tr. 518.

11          Notwithstanding, even if a fibromyalgia diagnosis was established and

12   credited as part of the evidence, Plaintiff has not identified any limitations

13   attributable to fibromyalgia which are not accounted for in the residual functional

14   capacity finding.  The RFC is "the most [a claimant] can still do despite his

15   limitations."  20 C.F.R. § 416.945(a)(1).  In making this finding, the ALJ need only

16   include credible limitations supported by substantial evidence.  *Batson*, 359 F.3d at

17   _____

18   [3] Subsequent records from Mr. Commet appear to adopt fibromyalgia as a

19   diagnosis.  Tr. 594, 596, 598, 603-05.  Jennifer Martin, PA-C, also mentioned

20   "suspected" fibromyalgia and referred Plaintiff to a rheumatologist.  Tr.  566, 571.

1    1197 (holding that ALJ is not required to incorporate evidence from discounted

2    medical opinions into the RFC).  Indeed, the ALJ gave significant weight to Dr.

3    Staley's opinion, and his assessment of limitations took into account Plaintiff's

4    complaints of fibromyalgia-like pain.  Tr. 100.  Plaintiff points to no additional

5    limitations due to alleged fibromyalgia which are supported by the record.  Thus,

6    even if the ALJ erred regarding the fibromyalgia diagnosis, the error is harmless

7    because the RFC finding would not be changed.  Errors that do not affect the

8    ultimate result are harmless.  *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir.

9    2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of*

10   *Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

11   **B.    Step Three – Listing 1.04**

12        Plaintiff next contends the ALJ erred at step three by finding that Plaintiff

13   does not meet Listing 1.04 for disorders of the spine.  ECF No. 12 at 14-16.

14        The Listing of Impairments[4] "describes each of the major body systems

15   impairments [which are considered] severe enough to prevent an individual from

16   doing any gainful activity, regardless of his or her age, education or work

17   experience."  20 C.F.R. § 416.925.  To meet a listed impairment, a claimant must

18   establish that she meets each characteristic of the listed impairment relevant to her

19   _____

20   [4] The Listing of Impairments is in Appendix 1 to 20 C.F.R. Subpart 404.

claim.  20 C.F.R. § 416.925(d).  If a claimant meets the listed criteria for disability,

she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).  The claimant

bears the burden of establishing she meets or equals a listing.  *Burch v. Barnhart*,

400 F.3d 676, 683 (2005).

Listing 1.04, "Disorders of the Spine," provides the Listing is met when the

spinal condition results in compromise of a nerve root or the spinal cord *and* there

is:

> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The ALJ found Listing 1.04 is not met or equaled because the medical evidence

does not establish the required evidence of nerve root compression, spinal

arachnoiditis (pain disorder), or lumbar spinal stenosis (degenerative spinal

1  disease).  Tr. 24.  The ALJ also found there is no evidence of the inability to

2  ambulate effectively to establish lumbar spinal stenosis under Listing 1.00B2b,

3  which defines the inability to ambulate.

4       Plaintiff contends "contrary to the ALJ's finding that [Plaintiff] does not

5  have spinal stenosis, she has had repeated diagnoses of lumbar spinal

6  stenosis/degenerative spinal disease." ECF No. 12 at 15-16.  The ALJ did not find

7  that Plaintiff does not have spinal stenosis.  In fact, the ALJ found Plaintiff's

8  lumbar degenerative disc disease is a severe impairment.  Tr. 23.  However, the

9  ALJ also found her lumbar disease does not meet the Listing 1.04 criteria for a

10  finding of disability.

11       Plaintiff has not met her burden of establishing that she in fact does meet the

12  Listing criteria.  A generalized assertion of functional problems is not enough to

13  establish disability at step three.  *Tackett*, 180 F.3d at 1100.  For a claimant to

14  show that his impairment matches a listing, it must meet all of the specified

15  medical criteria.  An impairment that manifests only some of those criteria, no

16  matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 530

17  (1990).  Despite many citations to the record reflecting a back impairment,

18  Plaintiff fails to demonstrate how the required elements of Listing 1.04 are met by

19  the evidence.  ECF No. 12 at 14.

20

1    Plaintiff also contends the ALJ erred by not considering Plaintiff's spinal

2  impairment in combination with her other severe impairments of obesity and

3  depression.  ECF No. 12 at 14.  The ALJ considered both obesity and depression in

4  detail, despite Plaintiff's assertion to the contrary.  Tr. 24, ECF No. 12 at 14.  In

5  *Burch*, the district court aptly explained, as in this case:

> There was no evidence before the ALJ, and none in the record, which
> states that claimant's obesity limits her functioning. Neither treatment
> notes nor any diagnoses addressed claimant's limitations due to
> obesity. The medical record is silent as to whether and how claimant's
> obesity might have exacerbated her condition. Moreover, claimant did
> not present any testimony or other evidence at her hearing that her
> obesity impaired her ability to work.

10  *Burch*, 400 F.3d at 683.  Furthermore, the *Burch* court concluded the ALJ did not

11  commit reversible error by failing to consider obesity in determining whether the

12  claimant met or equaled a listed impairment.  *Id.*  Unlike the ALJ in *Burch*, in the

13  case at hand, the ALJ did, in fact, consider the effects of obesity and depression.

14  Tr. 24-25.  Plaintiff has pointed to no evidence that those conditions exacerbate

15  Plaintiff's limitations to the point that Listing 1.04 is met or equaled.  Thus, the

16  step three finding is supported by substantial evidence and is legally sufficient.

17  **C.    Adverse Credibility Finding**

18    Plaintiff faults the ALJ for failing to provide specific findings with clear and

19  convincing reasons for discrediting her symptom claims.  Specifically, Plaintiff

20

1   contends the ALJ's credibility finding is based on error because the ALJ

2   mischaracterized her daily activities.  ECF No. 12 at 16-20.

3       An ALJ engages in a two-step analysis to determine whether a claimant's

4   testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

5   determine whether there is objective medical evidence of an underlying

6   impairment which could reasonably be expected to produce the pain or other

7   symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

8   "The claimant is not required to show that her impairment could reasonably be

9   expected to cause the severity of the symptom she has alleged; she need only show

10  that it could reasonably have caused some degree of the symptom."  *Vasquez v.*

11  *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

12      Second, "[i]f the claimant meets the first test and there is no evidence of

13  malingering, the ALJ can only reject the claimant's testimony about the severity of

14  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

15  rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

16  citations and quotations omitted).  "General findings are insufficient; rather, the

17  ALJ must identify what testimony is not credible and what evidence undermines

18  the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834); *see also Thomas*

19  *v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

20  credibility determination with findings sufficiently specific to permit the court to

conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms not credible. Tr. 26-27.

### 1.    Medical Evidence

First, the ALJ found the medical evidence does not support Plaintiff's allegations. Tr. 26. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant

factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §416.929(c)(2); *see also* S.S.R. 96-7p.[5] Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.   As discussed *supra*, the ALJ cited substantial evidence supporting the conclusion that the medical evidence does not support the degree of limitation alleged.  Tr. 26-27.  As a result, this is clear and convincing reason supported by substantial evidence which justifies the negative credibility finding.

### 2. *Inconsistencies and Daily Activities*

Second, the ALJ cited inconsistencies between Plaintiff's claims and the evidence in the record.  Tr. 27.  In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Furthermore, it is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making

_____

[5] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms. S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

1  the credibility determination.  *See Rollins*, 261 F.3d at 857.  Notwithstanding, it is

2  well-established that a claimant need not "vegetate in a dark room" in order to be

3  deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

4  However, if a claimant is able to spend a substantial part of her day engaged in

5  pursuits involving the performance of physical functions that are transferable to a

6  work setting, a specific finding as to this fact may be sufficient to discredit an

7  allegation of disabling excess pain.  *Fair,* 885 F.2d at 603.

8          The ALJ observed that despite allegations of constant, severe pain that

9  occasionally prevent her from getting out of bed, she reported activities such as

10  collecting scrap metal, gardening, trips to the mountains, fishing, playing sports

11  with her children, cleaning, riding her bicycling, and walking several miles at a

12  time.  Tr. 27, 49-51, 53-55, 59-62, 365, 505, 600, 609.  The ALJ reasonably

13  concluded these are not the type of activities that a person reporting constant,

14  severe pain would be expected to engage in.

15          The ALJ also noted that despite claims that her life is unbalanced and

16  implying that she has difficulties with social function, Plaintiff attends her

17  children's sporting events, family functions at school, and has close contact with

18  several family members for support.  Tr. 27, 334.  She attended a steel-tip dart

19  tournament.  Tr. 24-25, 45-46, 60-61.  The ALJ found her claims of difficulty with

20  concentration inconsistent with participation in activities like scrapbooking, taking

pictures, maintaining a journal, attending school, gardening, and cooking.  Tr. 27,

53-54, 59, 334-35.  Additionally, the ALJ found it significant that Plaintiff

described an incident of tripping on the stairs when she was running back and forth

between her garden and kitchen.  Tr. 27, 53-55, 566.  The ALJ concluded such

activity is inconsistent with disability.  Tr. 27.  The evidence cited by the ALJ

reasonably supports the finding that Plaintiff's activity level is inconsistent with

her claimed limitations.  Thus, this is a clear and convincing reason supporting the

credibility finding.

Plaintiff argues the ALJ misinterpreted her activities and cites her testimony

that the time spent collecting scrap metal amounts to less than 10 hours per week.

ECF No. 12 at 16-17; Tr. 51.  However, the ALJ cited Plaintiff's testimony about

collecting scrap metal to illustrate that she is more active than would reasonably be

expected of someone who is in constant severe pain and cannot get out of bed

some days, not to suggest she is engaged in substantial gainful activity or could

perform that particular activity as full-time work.  Similarly, Plaintiff contends the

ALJ should not have considered Plaintiff's online schoolwork because it "was

from 2011 which was prior to her starting her claim for SSI."  ECF No. 12 at 17.

However, her alleged onset date of August 1, 2010, indicates Plaintiff claimed to

be disabled during a period in which she was able to attend school.  Tr. 173, 186,

334.  This reasonably supports the ALJ's conclusion that Plaintiff's statements

1    about her disability and her activities are inconsistent.  Plaintiff also asserts that

2    she dropped out of school due to her disabilities.  ECF No. 12 at 17; Tr. 42-43.

3    Even if the ALJ should not have considered college activity, it was just one factor

4    in the overall finding that Plaintiff's activities are inconsistent with her statements.

5         Lastly, Plaintiff contends the ALJ mischaracterized the extent and duration

6    of her activities.  Plaintiff suggests that *Garrison*, 759 F.3d at 1016, indicates daily

7    activities must actually be inconsistent with disability before they become relevant.

8    The Court concludes it was reasonable for the ALJ find exactly that: activities such

9    as collecting scrap metal, gardening, bicycling, walking significant distances, and

10   others discussed by the ALJ are inconsistent with Plaintiff's allegations of

11   disability.  Plaintiff's activities are distinguishable from the activities discussed in

12   *Garrison* such as talking on the phone, cleaning a bedroom, preparing meals, and

13   caring for a child, all with significant assistance.  *Id.*  Plaintiff's activities are more

14   like those in cases cited by Defendant, such as *Berry v. Astrue*, 622 F.3d 1228,

15   1234-35 (9th Cir. 2010) (activities inconsistent with disability included daily walks

16   of a mile or more, social engagements, driving, crossword puzzles, computer work,

17   pet care, house-keeping, camping, and hiking), and *Valentine v. Comm'r of Soc.*

18   *Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (ALJ reasonably found exercise,

19   gardening and community activities inconsistent with disability).

20

1    Thus, the ALJ's finding regarding the inconsistency of Plaintiff's daily

2    activities with her allegations is supported by the evidence.  The Court concludes

3    the ALJ's interpretation of the evidence is reasonable, and this is a clear and

4    convincing reason supporting the credibility determination.

5                                    **CONCLUSION**

6    Having reviewed the record and the ALJ's findings, this Court concludes the

7    ALJ's decision is supported by substantial evidence and free of harmful legal error.

8    Accordingly, **IT IS HEREBY RECOMMENDED**:

9    1. Plaintiff's Motion for Summary Judgment, ECF No. 12, be DENIED.

10    2. Defendant's Motion for Summary Judgment, ECF No. 14, be GRANTED.

11                                    **OBJECTIONS**

12    Any party may object to a magistrate judge's proposed findings,

13    recommendations or report within **fourteen (14)** days following service with a

14    copy thereof.  Such party shall file written objections with the Clerk of the Court

15    and serve objections on all parties, specifically identifying the portions to which

16    objection is being made, and the basis therefor.  Any response to the objection

17    shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

18    directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of

19    service.

20

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED August 22, 2016.

s/Mary K. Dimke<br>
MARY K. DIMKE<br>
UNITED STATES MAGISTRATE JUDGE